[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 610 
It is insisted by the counsel for the defendant that the findings of facts by the referee do not warrant his conclusions of law. The ground upon which this position is based is, that the plaintiff, as assignee, could acquire no title under the assignment as against a judgment creditor, unless in accordance with the provisions of the Revised Statutes (2 R.S. 136, § 5), it was accompanied by an immediate delivery, and followed by an actual and continued change of possession of the property in question, or unless it was made to appear on the part of the assignee that it was made in good faith and without any intent to defraud creditors, and that neither of these facts are found by the referee. I think that the findings of the referee substantially cover the ground of the objection and are sufficient. He found that the assignor had no actual design to defraud his creditors by making the assignment, but intended to apply his property to the payment of his debts, preferring and securing his surety and indorsers.
This finding is equivalent, I think, to saying that the assignment was made in good faith, and without any intent to defraud creditors. The finding is very clear that the assignor had no such intent, which, I think, embraces good faith, for if he had no such design, it could not well be that the assignment was made in bad faith. But if this language may not be considered as disposing of or embracing the question of good faith, the subsequent phraseology employed shows an intention to appropriate the property of the assignor to the payment of his debts according to law, and thus manifests good faith, and rebuts the idea of any other or different presumption.
It is said that the assignment is void upon its face for two reasons: First, because it delays the payment of creditors until the debts and demands are collected and found uncollectible; and secondly, because it authorizes the assignee to appoint attorneys, one or more, under him, with full power *Page 611 
of substitution or revocation, ratifying whatever the said attorney may do. As to the first objection, it is urged that under the clause in the assignment containing the provision objected to, the assignee may postpone the payment of any creditor until the last dollar is collected, or until he is satisfied that the debts are uncollectible, and thus places it within the discretion of the assignee to determine when he shall pay. I think that this is not a fair and reasonable interpretation of the clause in question.
By the assignment, the assignee is required to collect the debts and demands due and to become due, "or so much of them as may be found collectible," and to dispose of the moneys received as provided for in the assignment. I do not understand that this provision is intended to vest any discretionary power with the assignee as to the time when the debts are to be paid, but merely to provide against the necessity of collecting debts not collectible before distribution. It does not expressly authorize any delay, but simply exonerates the assignee from liability to account for those debts which he has been unable to collect, by reason of the insolvency of the debtors or for any other good cause. Nor does it authorize any more discretion than can properly be exercised as to the collection of debts which are good, and which by the terms of the assignment he is bound to collect. It is the usual provision inserted in assignments, more for the protection of the assignee against liability for demands against insolvent and irresponsible parties, than for any other purpose. And it would be no defense to any action brought to compel the assignee to account, that, in his judgment and discretion, he chose to consider certain debts uncollectible, and therefore was not ready to account. In fact there is no good and valid reason why an assignee would not be compelled to make a partial distribution of the moneys collected, when a portion of the debts only remain unpaid because of the doubtful character of the latter demands. Nor why he should not sell and dispose of such demands at public sale when the interests of the estate demand such a disposition of them. *Page 612 
The authorities to which we have been referred to uphold the position taken do not, I think, sustain any such doctrine. (SeeWilson v. Leavitt, 6 N.Y. 500; Dunham v. Waterman,
17 id. 9; Stone v. Davenport, 1 Sandf. Ch. 135.) Nor does the provision in question suspend the power of the assignee to apply the estate without delay, as required by law.
As to the second objection. The authority to appoint attorneys for the transaction of the business is not conferring power to appoint a new assignee, but simply investing the assignee with the customary authority to employ other persons to act for him when circumstances may render it necessary, and when for good and sufficient reasons he is unable to give the business his personal supervision and attention. The authority would doubtless exist without such a provision, but I see no objections to its insertion for greater safety and security in the body of the assignment. And unless some such power was given expressly or was implied, the assignee would be without authority to appoint an attorney for some matters connected with the assignment which he could not well attend to personally.
The objection made that the referee erred in finding as a conclusion of law that the title to the property taken by the defendant was in the plaintiff rests upon the facts proved, which it is claimed establish that the assignment was fraudulent and void, and made in bad faith and with an intent to defraud creditors. Preferential assignments, although tolerated by law, have always been regarded with much suspicion, and unless free from fraud and unfairness, should not be sustained. It must be conceded, that, upon the trial before the referee, the facts proved, attending the change of possession and the manner in which the business was conducted, were calculated to cast suspicion upon the transaction. It appeared that the goods were allowed to remain in the store where they had previously been after the assignment; that the same sign remained over the door; that the assignor continued to occupy the house without any rent being fixed; transacted the business; sold and exchanged goods; collected accounts, and used the money with the consent of the assignee. *Page 613 
This proof was met on the part of the plaintiff by evidence that the assignor was employed and acted as agent of the assignee, who was frequently, sometimes as often as two or three times a day at the store, consulted with the assignor, examined the books, and to whom an account was rendered of the business. Although many of the circumstances proved furnished strong evidence of a fraudulent intent, and presented badges of fraud and circumstances of suspicion which were proper for the consideration of the referee, yet with the accompanying explanations they were not entirely conclusive.
So also the declarations of the assignor which are relied upon to establish a fraudulent purpose, to this effect, that he wanted the assignment made before judgment matured and executions issued; that he wanted to make an equal division among all his creditors, and that he did not want his property sacrificed, were to be considered by the referee upon the question of intent, but are not entirely controlling against the validity of the assignment. The question at issue as to the delivery and change of possession of the property assigned, and the good faith of the assignor in making the assignment without any intent to defraud creditors, as well as the question whether the assignment was made with an actual intent on the part of the assignor to prevent the sale of his property on execution, and thereby to hinder and delay, or to defraud his creditors, were questions of fact for the determination of the referee.
This court cannot interfere with his decision in questions of facts, even if the proof is of such a character as to create some hesitation and doubt. Certainly in this case, the facts are not so plainly and clearly against the decision of the referee as to make it entirely manifest that a question of law alone arises. As there was no error in the trial, the judgment must be affirmed.
All the judges concurring,
Judgment affirmed. *Page 614